The Honorable Dave Bisbee State Representative 14068 Pyramid Drive Rogers, Arkansas 72758
Dear Representative Bisbee:
This official Attorney General opinion is issued in response to your recent questions regarding the establishment of an administrative board for the purpose of administering a county 911 system.
You indicate that the Benton County Quorum Court created a 911 emergency telephone system and established an administrative board to administer the system. Accordingly, you have presented the following questions:
 (1) Was it lawful for the quorum court to establish a board to administer the 911 system, in light of the fact that A.C.A. § 12-10-304(a) empowers the chief executive of the political subdivision to designate an operating agency, and under A.C.A. § 12-10-303(17), the operating agency must be either an officer of emergency services, a fire department, or a law enforcement agency of the political subdivision?
 (2) If the board has the powers and duties that are set forth in the ordinance that established the board (Ordinance No. 88-5):
 (a) Does the county judge have the authority to call meetings of the board;
 (b) Does the county judge have the authority to hire or fire 911 administrative personnel, or is this the responsibility of the board;
 (c) Does the county judge have the authority to define the duties of 911 personnel;
 (d) Does the county judge have the authority to spend 911 revenues without the approval of the board; and
 (e) May the county judge refuse to honor purchase orders authorized by the board from funds appropriated by the quorum court?
RESPONSE
Question 1 — Was it lawful for the quorum court to establish a board toadminister the 911 system, in light of the fact that A.C.A. §12-10-304(a) empowers the chief executive of the political subdivision todesignate an operating agency, and under A.C.A. § 12-10-303(17), theoperating agency must be an officer of emergency services, a firedepartment, or a law enforcement agency of the political subdivision?
It is my opinion that it was lawful for the quorum court to establish an administrative board to administer the 911 system.
Although it is true that A.C.A. § 12-10-304(a) empowers the chief executive of the political subdivision to designate an operating agency for 911 systems, and that the operating agency must be an officer of emergency services, a fire department, or a law enforcement agency of the political subdivision, the 911 administrative board that was established by the Benton County Quorum Court is not the "operating agency" referenced in A.C.A. § 12-10-304(a).
It is my understanding that the designated "operating agency" in Benton County is the office of emergency services. As the designated "operating agency," that office is, by definition, responsible for "operat[ing] the 911 public safety communications center." A.C.A. § 12-10-303(17).
This responsibility is not one of the duties with which the 911 administrative board in Benton County is charged. Benton County Ordinance No. 88-5, which established the 911 administrative board, charges the administrative board with the responsibility of administering and managing 911 service in Benton County, which includes the following specific duties:
 (A) expending funds generated by the 911 service charge and appropriated by the Quorum Court;
 (B) developing a County-wide addressing and mapping system including emergency service boundaries in conjunction with 911 requirements;
 (C) establishing uniform standard operating procedures to be used at Public Safety Answering Points (PSAP);
(D) developing training programs and procedures for all dispatchers;
(E) recommending staffing requirements for PSAP'S;
(F) reporting annually to the Quorum Court;
(G) presenting an annual budget to the Quorum Court;
 (H) other actions and business consistent with the law as necessary to carry out the purposes of this ordinance.
Benton County, Arkansas, Ordinance No. 88-5.
Because none of the duties with which the administrative board is charged would entail the actual operation of the 911 public safety communications center, the board does not constitute an "operating agency," nor does it encroach upon the duties of the "operating agency."
Moreover, the creation of an administrative board such as the 911 board is specifically authorized by A.C.A. § 14-14-705, which states:
 A county quorum court, by ordinance, may establish county advisory or administrative boards for the conduct of county affairs.
* * *
 (2) ADMINISTRATIVE BOARDS. (A) Administrative boards may be established to exercise administrative powers granted by county ordinance. . . .
A.C.A. § 14-14-705.
I therefore conclude that the creation of an administrative board to administer the 911 system in Benton County was lawful.
Question 2(a) — Does the county judge have the authority to call meetingsof the board?
It is my opinion that the county judge has the authority to call the initial meeting of the 911 administrative board, but not subsequent meetings. A schedule of subsequent regular meetings must be established by the board. Subsequent special meetings must be called by two or more members of the board.
This matter is specifically addressed in A.C.A. § 14-14-707, which states:
 (a) INITIAL MEETING. The time and place for the initial meeting of a county board shall be established by the county judge through written notification of each board member.
 (b) MEETING DATES AND NOTIFICATION. All boards shall by rule provide for the date, time, and place of regular monthly meetings or other regularly scheduled meetings. This information shall be filed with the county court, and notification of all meetings shall be conducted as established by law for public meetings.
 (c) SPECIAL MEETINGS. Special meetings may be called by two (2) or more board members upon written notification of all members not less than two (2) calendar days prior to the calendar day fixed for the time of the meeting.
A.C.A. § 14-14-707.
I must conclude that under the unambiguous language of the above-quoted statute, the county judge is authorized to call only the initial meeting of the 911 administrative board.
Question 2(b) — Does the county judge have the authority to hire or fire911 administrative personnel, or is this the responsibility of theboard?
It is my opinion that the county judge has the authority to hire and fire 911 administrative personnel, and the board is empowered only to make recommendations regarding staffing requirements.
Amendment 55, § 3 of the Arkansas Constitution, as well as A.C.A. §14-14-1101(a)(6) and -1102(b)(5) specifically authorize the county judge to hire county employees. I have previously opined that county judges also have the concomitant power to fire county employees. See, e.g., Op. Att'y Gen. No. 91-204, citing Horton v. Taylor, 767 F.2d 471 (8th Cir. 1985). Although the power to hire and fire can be delegated by ordinance to a county board, see A.C.A. § 14-14-1102(b)(5)(B)(ii)(a), such power was not delegated to the Benton County 911 administrative board. Rather, Ordinance No. 88-5 merely empowered the board to "recommend staffing requirements for PSAP'S." Benton County, Arkansas, Ordinance No. 88-5, Article I(E).
Because the power to hire and fire 911 personnel has not been delegated to the board, I must conclude that such power remains with the county judge.
Question 2(c) — Does the county judge have the authority to define theduties of 911 personnel?
It is my opinion that although the county judge does have the authority to hire and fire county employees, state law does not give the county judge the authority to define the duties of county employees. This is normally a matter that would be addressed by ordinance of the quorum court under the authority of Amendment 55, § 4 of the Arkansas Constitution and A.C.A. § 14-14-801.
Question 2(d) — Does the county judge have the authority to spend 911revenues without the approval of the board?
Assuming that 911 revenues constitute "county funds,"[1] it is my opinion that the county judge has the authority to spend 911 revenues without the approval of the board.
The county judge is given express and final authority over the expenditure of county funds in A.C.A. § 14-14-1101 and -1102. County revenues cannot be paid out of the county treasury unless they have been duly appropriated by the quorum court, and the expenditure has been approved by the county judge. Therefore, when Ordinance No. 88-5 empowered the 911 administrative board to "expend funds generated by the 911 service charge," it did not grant the board the power to exercise that expenditure authority without the approval of the county judge.
Moreover, the ordinance cannot be read to have diminished the county judge's authority over expenditures, by requiring the board's prior approval of expenditures. Such a reading of the ordinance would render it contrary to state law. If a state law addresses a subject, counties can address the same subject only in a manner that is consistent with state law. A.C.A. § 14-14-809. State law does address the subject of who has final authority over the expenditure of county funds. The provisions of A.C.A. § 14-14-1101 and -1102 say that the county judge has such authority. Therefore, no county ordinance can conflict with that authority of the county judge. For this reason, Ordinance No. 88-5 must be interpreted to have granted the board the authority to spend 911 revenues only in accordance with the requirements of A.C.A. § 14-14-1101
and -1102. That is, Ordinance 88-5 must be read to have granted the board the authority to expend 911 revenues only with the approval of the county judge. (In addition, it should be noted that A.C.A. § 12-10-323, which sets forth the limited purposes for which 911 revenues may be utilized, must also be complied with.)
Question 2(e) — May the county judge refuse to honor purchase ordersauthorized by the board from funds appropriated by the quorum court?
It is my opinion that A.C.A. § 14-14-1102 gives the county judge the discretion to refuse to honor purchase orders if the requested expenditure does not meet the requirements that are set forth in A.C.A. § 14-14-1102(b)(2).
The judge is charged with the responsibility of making various determinations regarding the appropriateness of all requested expenditures prior to giving approval. More specifically, the county judge is required, before approving any voucher for the payment of county funds, to determine that:
 (i) There is a sufficient appropriation available for the purpose and there is a sufficient unencumbered balance of funds on hand in the appropriate county fund to pay therefor;
 (ii) The expenditure is in compliance with the purposes for which the funds are appropriated;
 (iii) All state purchasing laws and other state laws or ordinances of the quorum court are complied with in the expenditure of the moneys;
 (iv) The goods or services for which expenditure is to be made have been rendered and the payment thereof has been incurred in a lawful manner and is owed by the county.
A.C.A. § 14-14-1102(b)(2).
The above-quoted statute indicates that the county judge should not approve a purchase order that he or she determined was deficient in meeting one of the above-listed standards. Because of this express responsibility with which the judge is charged under A.C.A. §14-14-1102, I must conclude that it is within the county judge's discretion to refuse to honor purchase orders that are determined not to meet the requirements of A.C.A. § 14-14-1102(b)(2), even though they may have been authorized by the board from funds appropriated by the county.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The statutes governing 911 systems do not specify a required disposition of the service charge. Nevertheless, because such charges must be remitted to the political subdivision, A.C.A. § 12-10-320(c)(1), it is my opinion that the revenues from such charges do constitute funds of the political subdivision. Therefore, if the political subdivision is a county, the revenues constitute "county funds," and become a part of the county treasury by virtue of A.C.A. § 14-14-1313.